IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02376-CMA-NYW

ROBERT STEELE,

    Plaintiff,

v.

STALLION ROCKIES, LTD, and
STALLION OILFIELD SERVICES LTD.,

    Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
REGARDING DEFENDANTS' MOTION TO DISMISS**

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendants Stallion Rockies, LTD and Stallion Oilfield Services LTD's (collectively "Stallion" or "Defendants") Motion to Dismiss. [#19, filed September 24, 2014]. This Motion was referred to the undersigned Magistrate Judge pursuant to the Order of Reference dated August 29, 2014 [#10] and memorandum dated September 25, 2014 [#21]. After carefully considering the Motion and related briefing, the entire case file, and the applicable case law, I respectfully RECOMMEND that Defendants' Motion to Dismiss be GRANTED.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Robert Steele ("Plaintiff" or "Robert Steele") filed this lawsuit in the District Court, City and County of Denver, Colorado on August 4, 2014, asserting state and federal claims of discrimination on account of age and disability under the Age Discrimination in Employment Act ("ADEA"), Americans with Disabilities Act ("ADA"),

1

and the Colorado Anti-Discrimination Act ("CADA"), as well as a claim for "Wrongful Termination for Breach of Implied Contract Based upon Employer's Policies," and Tortious Interference with Contract. [#4]. The Complaint named Defendants, Anthony "Bart" Steele, and Scott Anderson, and sought an unspecified sum of monetary damages.[1] [*Id.* at 15-16].

Stallion removed the action to the United States District Court for the District of Colorado on August 27, 2014 pursuant to 28 U.S.C. § 1331. [#1] This court exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

The following facts are drawn from the Complaint, and are taken as true for the purposes of considering the instant motion. Plaintiff first began working for Stallion in February 2008 at its facility in Rifle, Colorado. [#4 at ¶ 9]. He was laid off in 2009, "along with almost 90% of the staff." [*Id.*] Plaintiff alleges he was laid off instead of two younger employees who were 21 and 23, and that "out of the dozen or so employees who were still employed, only 2 were over the age of forty." [*Id.* at ¶ 10]. Stallion rehired Plaintiff in March 2011 to work as a truck driver for the Rifle facility. [*Id.* at ¶ 11]. At the time, Plaintiff was 47 years of age and suffering from diagnosed Lumbar Degenerative Disc Disease. [*Id.* at ¶¶ 12, 17]. Stallion was aware of the condition, that Plaintiff utilized medical marijuana as a result of his condition, and that he was listed in the Colorado Medical Marijuana Registry. [*Id.*] Plaintiff's job duties required him to

---

[1] Plaintiff and Anthony "Bart" Steele are half-brothers and Defendant Bart Steele is employed as a manager at Stallion. On April 14, 2015, Plaintiff, Bart Steele, and Scott Anderson filed a stipulation for Mr. Steele and Mr. Anderson's dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a). [#52]. The court granted the Stipulation on April 29, 2015, thereby dismissing Bart Steele and Mr. Anderson from this lawsuit along with the claim for tortious interference of contract. [#57]. Given the same shared last name between Plaintiff Robert Steele and former Defendant Bart Steele, the court will use their full names to avoid confusion.

2

drive a company truck between various work sites and perform maintenance work. [*Id.* at ¶ 15]. Plaintiff alleges that despite his condition, he was able to "complete the essential job duties and functions for Stallion without any restrictions in a professional and workman like manner" from May 2011 until June 2012, when he tore his anterior cruciate ligament ("ACL") during an altercation with Bart Steele. [*Id.* at ¶¶ 18, 19]. Stallion subsequently placed Plaintiff on administrative leave for approximately three months, and he returned to work in September 2012 on a medical limited ability status and was assigned to light duty in Stallion's workshop. [*Id.* at ¶¶ 19, 20]. He began driving a passenger vehicle as his health improved. [*Id.* at ¶ 22]. At this time, he observed that he was one of the oldest employees employed at the Rifle facility. [*Id.* at ¶ 21]. Plaintiff alleges that throughout his employment co-workers made offensive comments regarding his age. [*Id.* at ¶ 23]. He further alleges that he had a poor relationship with Bart Steele, who used his influence on management to hinder Plaintiff in his job performance. [*Id.* at ¶ 24]. Plaintiff began receiving "write-ups for allegedly being insubordinate and for incorrectly filling out paper work." [*Id.*].

In early March 2013, Stallion hired a third party company to administer a drug and alcohol test at its facilities in Rifle, Colorado. [#4 at ¶ 25]. The results of Plaintiff's March 3, 2013 test were indeterminate due to a malfunction in the testing mechanism. [*Id.* at ¶¶ 26, 27]. Plaintiff was asked to retake the test "wherein he would be observed"; a management employee whose test results were similarly indeterminate was asked simply to retake the test at a later time. [*Id.* at ¶¶ 29, 30]. Plaintiff entered the Operations Manager's office to take a second test and reminded his managers that he was a Registered Medical Marijuana Participant. [*Id.* at ¶ 31]. Mr. Anderson then

3

instructed Plaintiff that he was fired and asked him to collect his belongings and vacate the premises. [*Id.* at ¶ 33]. The stated reason for termination was Plaintiff's violation of Defendants' Drug and Alcohol Policy, which prohibits the "use of intoxicants or controlled substance off the job resulting in interference with job performance"; "use of intoxicants or controlled substance on the job"; and the "presence of intoxicants or controlled substances during work hours, at or above levels established by statute, regulation, or written policy." [*Id.* at 37].

Plaintiff alleges that he never failed a drug or alcohol test while employed for Stallion, and there was "no indication that [his] urine sample contained any type of substance, nor did the pretreated vials show any indication of a reactive substance." [*Id.* at ¶ 32]. He further alleges that Stallion had no evidence that he kept "intoxicants or controlled substances" on his person or that his use of intoxicants or controlled substances interfered with his job performance. He claims that his relationship with Stallion had been "strained since Defendant, by words and conduct, demonstrated its disapproval of the need to accommodate Plaintiff's work restrictions and his disability." [*Id.* at ¶ 35]. Plaintiff filed a charge of discrimination and retaliation based on age and disability with the Colorado Civil Rights Division and the Equal Employment Opportunity ("EEO") Commission on September 4, 2013 and received his Right to Sue on June 4, 2014. [#4 at ¶¶ 44, 45].

Defendants filed the pending Motion to Dismiss on September 24, 2014. [#19]. Plaintiff filed his Response on October 10, 2014. [#23]. Defendants filed their Reply on October 27, 2014. [#25]. On February 10, 2015, this action was reassigned to the undersigned Magistrate Judge to conduct pre-trial matters. [#46, *see also* #50]. The

instant motion is ripe, and the court has determined that oral argument would not materially assist in its disposition.

## STANDARD OF REVIEW

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**ANALYSIS**

**I.    Administrative Exhaustion of Claims**

Defendants argue that the court may not consider allegations of discrimination arising from events that took place prior to November 8, 2012, and that Plaintiff failed to administratively exhaust any claims for discrimination other than for the March 3, 2013 termination. [# 19 at 5].  Furthermore, Defendants argue, Plaintiff is barred from asserting claims that pre-date Stallion's Chapter 11 bankruptcy reorganization in February 2010.   *Id.*   Plaintiff does not contest these limitations.   [#23 at 7]. Nonetheless, and for the purpose of clarity, I address them as follows.

The ADEA, ADA, and CADA require a party to exhaust administrative remedies within 300 days or less of the alleged unlawful practice. *See* 29 U.S.C. §§ 626(d)(1)(A)-(B); 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); C.R.S. § 24–34-306.  On September 4, 2013, Plaintiff timely filed his EEO complaint as to his claim for the March 3, 2013 unlawful termination.[2]   However, each discrete incident of allegedly discriminatory treatment constitutes its own "'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) (abrogating the continuing violation doctrine as to claims of discriminatory or retaliatory action by employers such that a plaintiff is required to exhaust administrative remedies for each incident of violative treatment as a prerequisite to asserting a claim). Following *Morgan*, the plaintiff is barred "from suing on claims for which no administrative remedy had been sought, when those incidents occurred more than 300

---

[2] The September 4, 2013 EEO complaint also included retaliatory conduct [#4 at ¶ 44], but Plaintiff does not assert a claim for retaliation in his Complaint. [#4].

days *prior* to the filing of plaintiff's EEO complaint." *Id.* The September 4, 2013 EEO complaint operated to administratively exhaust the claim for the March 3, 2013 termination only, and cannot be construed as exhausting a claim for discrimination stemming from the 2009 layoff. In addition, this court will not consider allegations of discrimination arising from events that transpired prior to November 8, 2012, which marks 300 days prior to when Plaintiff filed his EEO complaint.

Plaintiff is likewise barred from asserting claims of discriminatory treatment premised on events that occurred prior to the confirmation of Stallion's Chapter 11 bankruptcy plan. *See Jaurdon v. Cricket Communs., Inc.*, 412 F.3d 1156, 1158 (10th Cir. 2005) ("The confirmation of a plan in a Chapter 11 bankruptcy discharges a non-individual debtor … from pre-petition debt unless a creditor does not receive formal notice of the bankruptcy.") (citing 11 U.S.C. § 1141(d)(1)(A)) (further citation omitted). Plaintiff does not allege or argue that he did not receive notice of Stallion's bankruptcy. [#4, #23]. Therefore, he is bound by the terms of the reorganization plan, and any claims premised on events that pre-date the February 2010 confirmation were extinguished pursuant to the plan. *Id.*

## II. Federal Discrimination Claims

Courts within the Tenth Circuit generally consider disparate-treatment claims, such as those for age and disability discrimination, within the framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05 (1972).[3] *Hawkins v. Schwan's Home Service, Inc.*, 778 F.3d 877, 883 (10th Cir. 2015) (citing *Davidson v. Am. Online, Inc.,*

---

[3] The burden-shifting framework of *McDonnell Douglas* "may be unnecessary and inappropriate" where there is direct evidence of discrimination. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 n.3 (10th Cir. 1997).

337 F.3d 1179, 1189 (10th Cir. 2003). Under the *McDonnell Douglas* test, a *prima facie* case of discrimination requires that (1) Plaintiff belong to a protected class; (2) he suffered adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See E.E.O.C. v. PNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007). *See also Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) ("[P]laintiff's articulation of his *prima facie* case may vary depending on the nature of the claim," however, "[t]he critical *prima facie* inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination."). Despite the fact that Plaintiff does not have to establish a *prima facie* case of discrimination in his Complaint to survive the instant Motion to Dismiss; the court now looks to "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012).

    A.    <u>Age Discrimination Under the ADEA</u>

It is unlawful for any employer to refuse to hire, fire, or otherwise discriminate against an individual with respect to the compensation, terms, conditions, or privileges of his employment because of such individual's age. 29 U.S.C. § 623(a)(1). "To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (citing *Bridge v.*

*Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653 (2008)) (further citation omitted).[4] In this Circuit, while Plaintiff need not allege that his age was the *sole* motivating factor for his termination, he must allege that "age was the factor that made a difference" in causing the adverse action. *Jones v. Oklahoma City Public Schools*, 617 F.3d 1273, 1277-78 (10th Cir. 2010) ("an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference").[5]

Plaintiff has failed to allege facts that would support a claim that his age was the "but-for" causation of his termination. The only allegations Plaintiff asserts regarding disparate treatment on account of age are as follows: in 2011, at the age of 47, he observed he was one of the oldest workers employed at the Rifle facility [#4 at ¶ 21]; and prior to his termination, co-workers made offensive comments regarding his age. [*Id.* at ¶ 23]. Plaintiff does not identify who made the derogatory comments, whether those individuals had any role in management or the determination of whether he was retained or not as an employee, when they were made, or the context in which they were made. Nor does he allege a nexus between these comments and Mr. Anderson's actions; the court is simply left to assume that one exists. *See Khalik*, 671 F.3d at 1194 (affirming order granting employer's motion to dismiss and stating "there is nothing other than sheer speculation to link…the termination to a discriminatory or retaliatory motive").

---

[4] The but for causation standard applies under both the ADEA and the CADA. *See Fuller v. Seagate Technology, LLC*, 651 F. Supp. 2d 1233, 1242 (D. Colo. 2009) (citing *Bodaghi v. Department of Natural Resources,* 995 P.2d 288, 297–98 (Colo. 2000).

[5] Notwithstanding Justice Thomas's comment in *Gross* that "the Court has not definitively decided whether the evidentiary framework of [*McDonnell Douglas*] utilized in Title VII cases is appropriate in the ADEA context (*Gross*, 557 U.S. at 175 n. 2), the Tenth Circuit has reaffirmed its application of *McDonnell Douglas* to discrimination cases under the ADEA. *See Jones*, 617 F.3d at 1278.

For Plaintiff's claim of age discrimination to be plausible, he must allege at least some further detail that his age (rather than his use of medical marijuana or his strained relationship with Bart Steele or others) was a factor that led to his termination.

By contrast, Plaintiff concedes that his use of medical marijuana was barely tolerated by his employer and potentially in conflict with the employer's drug policy. On March 3, 2013, Plaintiff was asked by the third party examiner to re-take the drug and alcohol test. He agreed to do so and reminded Mr. Anderson at that time that he was a Registered Medical Marijuana Participant. [#4 at ¶ 31]. Rather than allow Plaintiff to re-take the test, Mr. Anderson fired him for violation of Stallion's Drug and Alcohol Policy, which prohibits the "use of intoxicants or controlled substance off the job resulting in interference with job performance"; "use of intoxicants or controlled substance on the job"; and the "presence of intoxicants or controlled substances during work hours, at or above levels established by statute, regulation, or written policy." [*Id.* at ¶ 37]. Plaintiff contends that Stallion had no evidence he was in violation of these prohibitions. [*Id.* at ¶ 32]. That may be. However, this dispute in no way implicates Plaintiff's age; rather, it presents a question of whether his use of medical marijuana contravened company policy. *See Curry v. MillerCoors, Inc.*, No. 12-cv-02471-JLK, 2013 WL 4494307, at *3 (D. Colo. Aug. 21, 2013) (enforcing a company policy is a lawful basis to discharge an employee, and "a positive test for marijuana, whether from medical or any other use, is a legitimate basis for discharge under Colorado law.")  These allegations, taken together, simply do not state a claim to relief for age discrimination that is plausible on its face, and therefore, Plaintiff's claims for age discrimination pursuant to the First and Second Claim for Relief stated in the Complaint should be dismissed.

B.     Disability Discrimination Under the ADA

The ADA prohibits discrimination against disabled individuals. 42 U.S.C. § 12112(a). To state a *prima facie* case for discrimination under either statute, Plaintiff must establish that (1) he is disabled; (2) he was qualified, with or without reasonable accommodation, to perform the essential function of his job; and (3) his employer discriminated against him because of his disability. *Robert v. Bd. of County Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012). Again, this framework guides the court's consideration as to whether Plaintiff has set forth a plausible claim of disability discrimination that can survive a challenge pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants argue that Plaintiff has not asserted allegations to satisfy the first or third prongs of the applicable standard. A person is "disabled" under the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "To satisfy this definition, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Carter v. Pathfinder Energy Servs., Inc.,* 662 F.3d 1134, 1142 (10th Cir.2011) (internal quotation marks omitted).

Plaintiff does not expressly identify his disability, but the court presumes, for the purposes of the pending motion, that he alleges that he is disabled due to Lumbar Degenerative Disc Disease and/or his ACL injury. [#4 at ¶ 17]. But Plaintiff does not allege any facts that the Lumbar Degenerative Disc Disease interfered with one or more of his major life activities. Instead, he states in his Complaint that he was able to

complete his essential job duties without any restrictions, and the condition did not interfere with truck driving duties. [#4 at ¶¶ 16-18]. Plaintiff first required accommodations in September 2012 when he returned from a three-month administrative leave necessitated by a torn ACL. [*Id.* at ¶¶ 19-20]. He resumed working on a medical limited ability status and was assigned to "light duty in the workshop." [*Id.* at ¶¶ 20, 22]. Plaintiff drove a passenger vehicle as "his health condition tolerated" [*id.* at ¶ 20], but does not allege that his ACL injury substantially limited a major life activity or that his torn ACL has resulted in a long-term impairment. *See Morgan v. Goodwill Indus. Of Denver, Inc.*, No. 12–cv–00274–WYD–CBS, 2013 WL 6728777, at *7 (D. Colo. July 19, 2013). Indeed, Plaintiff cannot be regarded as disabled for an injury that was transitory and minor. *Id.* Nor does Plaintiff identify any facts in his Complaint that Stallion treated or regarded him as having an impairment that substantially limited any major life activities, as an employer's accommodation of a medical condition and request for "light duty" does not establish that Plaintiff was perceived to be disabled. *Id.*

Even if I found that Plaintiff is disabled, there is no basis for finding that Stallion terminated his employment as the result of his disability. As I concluded above, the facts as pled in the Complaint suggest that Plaintiff was terminated from his employment for his use of medical marijuana or his adversarial relationship with Bart Steele.[6] Although Plaintiff alleges that his relationship with Stallion was strained due to

---

[6] The Complaint indicates that Plaintiff uses medical marijuana to ease his back condition, rather than to alleviate discomfort associated with his knee injury. [#4 at ¶ 16]. In any event, Plaintiff does not achieve protected status by virtue of his use of medical marijuana, and termination as a result of that use does not constitute discrimination. *See Curry*, 2013 WL 4494307, at *3 ("anti-discrimination law does not extend so far as to shield a disabled employee from the implementation of his employer's standard policies against employee misconduct.").

12

his disability and need for accommodations [#4 at ¶ 35], he fails to allege a single, specific example of how his medical condition, or any accommodation therefore, led to his termination. Indeed, Plaintiff opines in the Complaint that Stallion's management was influenced against him as a result of his troubled relationship with Bart Steele. [#4 at ¶ 24]. Furthermore, Mr. Anderson did not work at the Rifle facilities and Plaintiff does not allege that he spoke with or met Mr. Anderson prior to March 3, 2013. [#19 at 11]. Even construing the allegations in a light most favorable to the pleading party, I cannot find that Plaintiff has alleged his termination occurred under circumstances giving rise to an inference of disability discrimination. Therefore, Robert Stallion's Third Claim for Relief for violation of the American Disabilities Act should be dismissed.

## III.    State Law Claims

Plaintiff also brings parallel state claims for age and disability discrimination under CADA. [#4 at ¶¶ 51-55, ¶¶ 63-67], as well as Plaintiff's Sixth Claim styled as Wrongful Termination for Breach of an Implied Contract Based upon Employer's Policies. [#4 at 12]. While the court may exercise supplemental jurisdiction over state law claims in any case in which it exercises original jurisdiction, a district court may also decline to exercise supplemental jurisdiction over state law claims when the district court has dismissed all claims over which it has original jurisdiction. Given my findings with respect to Robert Steele's federal claims, I respectfully recommend that this court decline to exercise jurisdiction over Robert Steele's remaining state law claims for age and disability discrimination under CADA as well as breach of an implied contract.

A.   <u>CADA Claims</u>

To the extent that the court does exercise its discretion to exercise supplemental jurisdiction over Plaintiff's discrimination claims as they arise under CADA, Section 24-34-402(1)(A) of the Colorado Revised Statutes provides that it is a discriminatory or unfair employment practice "[f]or an employer to refuse to hire, to discharge, to promote or demote, to harass during the course of employment, or to discriminate in matters of compensation, terms, conditions, or privileges of employment against any person otherwise qualified because of ... age...."). Similarly, CADA prohibits discrimination against disabled individuals. C.R.S. § 24-34-402(1)(a). *See also Fleites v. Pueblo Med. Investors, LLC*, No. 07-cv-2658–REB–MJW, 2008 WL 4371924, at *1 (D. Colo. 2008) ("The ADA and the CADA are, essentially, parallel statutory schemes that address disability discrimination.").

When considering an age discrimination claim brought under state law, Colorado courts are not bound to federal case law, but have concluded that such law is persuasive authority. *See George v. Ute Water Conservacy Dist.*, 950 P.2d 1195, 1198 (1997). Plaintiff makes no argument that his state law discrimination claims can survive if his federal claims are dismissed. [#23]. Due to the parallel nature of these claims, this court respectfully recommends dismissal of Plaintiff's state discrimination claims for age and disability discrimination under CADA for the reasons set forth above.

B.   <u>Breach of Implied Contract</u>

To the extent that the court reaches Plaintiff's breach of implied contract claim, I also respectfully recommend its dismissal. Plaintiff claims that his termination was in breach of Stallion's Drug and Alcohol Policy (the "Policy") because the Policy "by its

14

terms, did not prohibit its employees from the lawful use of prescribed medication when such prescription was prescribed by a licensed health care professional and utilized by the Plaintiff as prescribed, but not in a manner that would cause Plaintiff to test positive for marijuana use at work." [*Id.* at ¶ 70]. Plaintiff also averred that Defendants "promised he would not be discharged for complying with [it]," he was in compliance, and he "reasonably relied on the promises contained in the Policy." [#4 at ¶¶ 68-78].

Defendants argue that the Policy is merely a description of company protocols and provides no guarantee of continued employment for those who do not violate it. #19 at 12-13]. The Handbook, in which the Policy is contained, decrees that company policies are not contractual and are subject to change without notice. [#19 at 13] (citing Stallion's Employee Handbook, #19-1 at 5) ("[T]he information and policies described in this handbook are subject to change without prior notice. The company may add to the policies and procedures or revoke or modify them from time to time.").[7] Finally, Stallion argues, Plaintiff's marijuana use was not in compliance with the Policy regardless of whether the use was for medicinal purposes. [*Id.* at 15].

Under Colorado law, the question of whether employees may enforce employment policies is determined by "ordinary contract principles"; an employee may seek to enforce his employer's policies or procedures under a theory of breach of contract or promissory estoppel. *Geras*, 638 F.3d at 1315 (citing *Cont'l Air Lines, Inc. v. Keenan,* 731 P.2d 708, 711–12 (Colo. 1987) (further citations omitted). An implied

---

[7] Defendants may attach the Policy to their Motion to Dismiss without the court converting the Motion into one for Summary Judgment. *See Geras v. International Business Machines Corp.,* 638 F.3d 1311, 1314-15 (10th Cir. 2011) (the court may consider evidence referenced in and central to the Complaint without conversion to a motion for summary judgment) (citations omitted).

contract arises from the parties' conduct, rather than from written or oral words, and to state such a claim Plaintiff must allege (1) the existence of a contract; (2) performance by him or a justification for nonperformance; (3) Stallion's failure to perform the contract; and (4) resulting damages. *See Trujillo v. City of Colorado Springs*, No. 07–cv–00753–MSK–BNB, 2008 WL 511890, at * 3 (D. Colo. February 22, 2008) (citing *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1192 (Colo. 2001)). A promise that forms the basis of an enforceable contract "must be sufficiently specific to 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Soderlun v. Pub. Serv. Co.*, 944 P.2d 616, 620 (Colo. App. 1997) (quoting Restatement (Second) of Contracts § 33(1) & (2) (1981)). In addition, the "employee must show that the employer's actions manifested an intent to be bound." *Geras*, 638 F.3d at 1315 (quoting *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1322 (10th Cir.1999), *overruled on other grounds by Morgan,* 536 U.S. at 101.

I find that the Policy cannot be construed as a legally binding promise, either implied or express, from which Plaintiff could derive an expectation of continuing employment. *See Geras*, 638 F.3d at 1315 (affirming district court's Rule 12(b)(6) dismissal of former employee's contract claims and finding that "[i]f the statement is merely a description of the employer's present policies or a forecast of the employee's likely career progression, it is neither a promise nor a statement that could reasonably be relied upon as a commitment") (quoting *Soderlun*, 944 P.2d at 620). *Cf. Tuttle v. ANR Freight System, Inc.,* 797 P.2d 825 (Colo. App. 1990) (employee handbook's statement of no gender discrimination and specific method of determining wage rate support female employee's wage claim). The Policy, which states Stallion's

commitment to a drug-free workplace, merely delineates the company's expectations of its employees with respect to their use of drugs and alcohol and cannot reasonably be interpreted as a reciprocal agreement whereby Stallion will take or forbear taking action upon an employee's compliance. Moreover, Plaintiff's employment with Stallion was irrefutably at-will:

> Your employment with Stallion is 'at-will.' This means that…the company may terminate your employment with the company at any time, for any reason, without notice. No oral or written statements made at any time…may alter the at-will nature of your employment or imply that termination of employment will occur only for cause. An employee's at-will status may not be altered, except by a written contract signed by the employee and the company CEO specifically stating that the employee's employment with Stallion is for a certain period of time.

[#19-1 at 6]. Plaintiff does not allege that he signed a written agreement with Defendants' designated officer that altered his at-will status. Rather, in January 2007 and again in May 2011, Plaintiff signed a form acknowledging not only receipt of the Handbook, but that his employment with Stallion was at-will. [#19-2]. Barring any discriminatory or otherwise unlawful motive not discussed herein, Plaintiff's at-will employment designation permitted Stallion to discharge him even if he was in compliance with the Policy. *See, e.g., Soderlun*, 944 P.2d at 619 (the at-will designation means "either the employer or the employee may terminate the relationship at any time, without notice and without cause.") (citation omitted). Nor does the Complaint allege that any employee of Stallion promised Plaintiff continued employment through spoken words or actions. [#4]. Finally. having found no implied contract exists, I need not address Defendants' remaining arguments of whether or not Plaintiff was in compliance with such contract.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Defendants' Motion to Dismiss [#19] be GRANTED in its entirety.[8]

DATED: May 7, 2015                                    BY THE COURT:


                                                       s/Nina Y. Wang_____
                                                       United States Magistrate Judge

---

[8] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).